IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Mike Malcolm Willoughby, )<br>    Petitioner, )<br> ) | |
| v. ) | 1:21cv220 (LO/TCB) |
| ) | |
| Commonwealth of Virginia, )<br>    Respondent.[1] ) | |

## MEMORANDUM OPINION

Mike Malcolm Willoughby ("Willoughby" or "Petitioner"), proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in the Circuit Court of Henrico County, Virginia for maliciously shooting or throwing a missile at an occupied vehicle (felony), and misdemeanor assault. [Dkt. No. 1]. On April 5, 2021, Respondent filed a Motion to Dismiss, with a supporting brief and exhibits. [Dkt. Nos. 8-10]. Petitioner was notified of his right to respond after receiving the notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) [Dkt. No. 18], but he has not filed a response. Accordingly, this matter is now ripe for disposition. For the reasons that follow, respondent's Motion to Dismiss must be granted, and the petition will be dismissed.

### I. Procedural History

On June 28, 2018, pursuant to a plea agreement, Petitioner entered a plea of "nolo contendere" to maliciously shooting at an occupied vehicle in violation of Virginia Code § 18.2-154, and misdemeanor assault in violation of Virginia Code § 18.2-57. Commonwealth v. Willoughby, Case Nos. CR17 – 3879 and – 3880. The circuit court sentenced petitioner to seven

---

[1] Petitioner is not in physical custody, but is on probation under suspended sentences. Respondent has moved that the Harold W. Clarke, Director of the Virginia Department of Corrections, be substituted as the proper party respondent. The motion will be granted.

years in prison with four years and three months suspended for his felony conviction and twelve months in jail for the misdemeanor assault. Judgment imposing the sentences was entered on July 25, 2018.

Petitioner filed a petition for appeal in the Court of Appeals of Virginia asserting that "the trial court 'abused its discretion when it amended the agreement after [he] had accepted the terms and signed the agreement'" (CAV R. at 16), and that "he 'was denied the right to withdraw his plea after the trial judge directed an amendment to the plea agreement.'" (Id. at 33). The Court of Appeals found the claim was barred by Rule 5A:18, but evaluated the assertion of error under the miscarriage of justice exception, and found the trial court did not err in accepting the plea after the amendment to the plea agreement. The Court of Appeals summarized the pertinent proceedings as follows:

> Appellant entered into a written plea agreement with the Commonwealth and completed a rights waiver form. The plea agreement stated that the terms and conditions of appellant's agreed- upon suspended sentence included a requirement that appellant "follow through with any and all recommendations made by his probation officer and Henrico Mental Health." At the plea hearing, when the trial court reviewed that requirement with appellant, appellant advised the trial court that he had "a private psychiatrist." The trial court instructed that the agreement be amended to include the name of appellant's psychiatrist and to remove Henrico Mental Health. The trial judge explained: "I'm not going to make him go to Henrico Mental Health. He's got a private psychiatrist." Appellant responded: "I appreciate it." The trial court further instructed that the agreement should reflect that appellant was "to take all medication Prescribed by this doctor." appellant indicated that at that time his medications were prescribed on an "as needed" basis and the trial court agreed that "[i]f the doctor says as needed, that's fine."
>
> Appellant contends that by "instructing the Commonwealth to make the amendments to the plea agreement, the [c]ourt materially participated in the agreement which it is specifically prohibited from doing under Rule 3A:8(C)(1)(c)." Before accepting the plea agreement, the trial court Engaged in a colloquy about his with appellant about his guilty pleas. Appellant confirmed To the trial court that he understood the charges against him and that he had the opportunity to discuss the charges with his attorney. He assured the trial court that he had decided for himself to plead no contest and that he was doing so freely and voluntarily because he understood " that the Commonwealth has enough evidence to prove [his] guilt beyond a reasonable doubt" and that a " no contest plea is the

2

> equivalent of a guilty plea." The trial court reviewed the written plea agreement with appellant and appellant specifically agreed to the suggested changes regarding his mental health provider . The trial court then accepted appellant's plea agreement with the Commonwealth and convicted him of the offences.
>
> .... [The] appellant agreed to the trial court's recommended changes to the plea agreement and expressed his appreciation of the accommodation. On the basis of the trial court record, we conclude the trial court did not; thus, the ends of justice exception does not apply. Rule 5A:18.

(CAV R. at 34-35) (footnote omitted).[2] The court denied the petition for appeal on May 22, 2019. Willoughby v. Commonwealth, Record No. 1282-17-2. Willoughby did not appeal that decision. [Dkt. No. 1 at 2].

Willoughby executed a state habeas petition on January 20, 2020, and filed it in the Supreme Court of Virginia ("habeas court") on February 26, 2020. Willoughby v. Edmonds, Record No. 200314. The petition alleged:

> Petitioner was denied effective assistance of counsel because counsel failed to object when the trial court directed the prosecutor to amend petitioner's plea agreement to include a provision that petitioner take medications as prescribed by his doctor. The trial court's conduct constituted improper participation in the plea negotiation process and counsel's failure to object to the amended plea agreement denied petitioner the opportunity to withdraw his pleas and proceed to trial.

(VSCT R. at 213).[3] The habeas court denied and dismissed the petition on January 28, 2021.

On February 11, 2021, Willoughby filed a timely § 2254 habeas petition in this Court and raised the following claim:

> Petitioner was denied effective assistance of counsel because counsel failed to object when the trial court directed the prosecutor to amend petitioner's plea agreement to include a provision that petitioner take medications as prescribed by his doctor. The trial court's conduct constituted improper participation in the plea negotiation process and counsel's failure to object to the amended plea agreement denied petitioner the opportunity to withdraw his pleas and proceed to trial.

---

[2] The Court of Appeals noted in a footnote that Petitioner's "counsel initialed the hand-written amendments to the written plea agreement, indicating the appellant consented to the changes.' (CAV R. at __).

[3] The record of the habeas proceedings also contains a copy of the trial court record and the transcript of the plea proceedings. (VSCT R. at 68-200).

3

## II. Statement of Facts[4]

On June 27, 2018, Willoughby was arraigned on one felony count of maliciously shooting or throwing a missile at an occupied vehicle and one misdemeanor count of assault and battery. (VSCT R. at 183-84). Willoughby pleaded no contest to the charges. Id. The proffer established that on June 20, 2017, Henrico police responded to a report of a shooting and met the victim, Shenelle Alston, at the Sunoco gas station at 4300 Nine Mile Road. (Id. at 194). Alston told the officers that Mike Willoughby shot her. Id. On the day after the shooting, Alston told police that Willoughby had pulled his car up to a traffic light the previous night, beside her car, pulled out what she believed to be a gun, and shot at her. (Id. at 195). The gun was determined to be a pellet gun. Id. Alston was transported to the hospital with only minimal bleeding. Examination of the vehicle in which Alston was seated established that one pellet from the pellet gun had hit Alston's vehicle's dashboard, and a second pellet had hit the back of her head. Id. The second pellet "remained in her hair until it was removed by EMS at the hospital." Id.

Willoughby was interviewed by Detective Rosser at the Henrico County Police Department. Id. After initially denying being involved in the shooting, Willoughby ultimately admitted to shooting Alston because "he had heard that she [was] sleeping with other men and he [was] performing oral sex on her and ... [did not] want that to cause him to pick up any STIs..." Id.

Willoughby proffered that had the matter gone to trial, he would have offered evidence that he and Alston were in "an off and on kind of contentious relationship," and that Alton was aware of his mental health issues and may have been "taking advantage of

---

[4] The statement of facts is derived from the proffer and the plea colloquy, and that affidavit petitioner filed in support of the petition.

4

[him] with respect to his ... medications ... so she could obtain them and some other things." (Id. at 196).[5]

After Willoughby entered his pleas, the trial court asked him if he had spoken with his attorney about the charges, and if after those discussions, it was his decision to plead no contest. He answered, "Yes" to both questions. (Id. at 185). Willoughby agreed twice that he entered his pleas freely and voluntarily. (Id. at 185-86). Willoughby affirmed that he had entered into a written plea agreement (Id. at 187) and acknowledged his understanding of the sentence to be imposed once the plea agreement was accepted. (Id. at 188). The trial court asked, "And you shall follow through with any and all recommendations by your probation officer and Henrico Mental Health? Because part of this says I'm referring you to Henrico Mental Health for evaluation and treatment, do you understand that?" Willoughby responded, "No, I mean I understand that." (Id. at 190). Willoughby offered, "I have a private psychiatrist," and his counsel offered documentation to verify that. Id. The trial court replied, "Then the psychiatrist's name should be in this and because I want him to continue with that psychiatrist until successful completion of treatment." (Id. at 190-91). The trial court further explained, "if he's got a private psychiatrist, his probation officer will monitor the private psychiatrist. I'm not going to make him go to Henrico Mental Health. He's got a private psychiatrist." (Id. at 191). Willoughby answered, "I appreciate it." Id. Willoughby then spelled his doctor's name, the Assistant Commonwealth's Attorney repeated the spelling, and then

---

[5] In the affidavit in support of the habeas petition, petitioner admits that he shot into an occupied vehicle with a "BB gun." [Dkt. No. 2 at 1]. Attachments to his petition indicate the offense took place on June 30, 2017, in Henrico County, and that the victim was hit in the head. [Dkt. No. 1-1 at 7-8]. Petitioner avers that he had a relationship with the victim, that he was trying to "scare" the victim, and that he was "pissed at her for having unprotected sex with other people." [Id. at 7].

5

substituted the doctor's name in the plea agreement in the place of "Henrico Mental Health." (Id. at 191-92).

Willoughby's counsel then clarified on behalf of his client that Willoughby was on medications and they were only to be taken "as needed." (Id. at 192). And, the trial court replied, "If the doctor says as needed, that's fine." Willoughby's counsel ended that exchange with "Okay, perfect Judge." Id.

The trial court accepted Willoughby's pleas of no contest and sentenced him in accordance with the written plea agreement to a total active sentence of three years and nine months on both offenses. (Id. at 197-98). The trial court also imposed ten years of supervised probation upon Willoughby's release from incarceration conditioned upon his having no contact with Alton, maintaining a 1,000 feet distance from her residence, and complying with the directions of his probation officer and psychiatrist. (Id. at 198-99).

### III. Exhaustion

"[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted his state remedies by presenting his claims to the highest state court." Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000). Exhaustion requires that a petitioner must have presented "'both the operative facts and the controlling legal principles'" to the state's highest court. Kasi v. Angelone, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Respondent admits that petitioner exhausted his claim by raising it in his state habeas petition. [Dkt. No. 9 at 6].

### IV. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was

6

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Knowles v. Mirzayance, 556 U.S. 111, 121 (2009). "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 571 U.S. 12, 20 (2013).

An unreasonable application of federal law is not the same as an incorrect application. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); accord Renico v. Lett, 559 U.S. 766, 772-73 (2010). That is, the state court's judgment "must be objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (internal quotations and citation omitted); see Harrington v. Richter, 562 U.S. 86, 103 (2011) (state decision is unreasonable application of federal law only if ruling so "lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement").

This "highly deferential standard ... demands that state court decisions be given the benefit of the doubt." Renico, 559 U.S. at 773 (internal quotations and citations omitted). "The required deference encompasses both the state court's legal conclusions and its factual findings." Lenz v. Washington, 444 F.3d 295, 299 (4th Cir. 2006). "[A] determination on a factual issue made by a State court shall be presumed correct." Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)). "In reviewing a habeas petition, federal courts must presume the correctness of a state court's factual determinations unless the habeas petitioner rebuts the presumption of correctness by clear and convincing evidence." Green v. Johnson, 515 F.3d 290, 299 (4th Cir. 2008); see Schriro, 550 U.S. at 473-74.

Claims of ineffective assistance of counsel are determined based on the highly demanding standard set forth for such claims in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, the petitioner has the burden to show both that his attorney's performance was deficient and that he was prejudiced as a result. See Strickland, 466 U.S. at 687.

A "doubly deferential judicial review" applies to "a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles, 556 U.S. at 123; see also Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016). Put another way, federal courts on habeas review give the benefit of the doubt to the state courts and to defense counsel. Woods, 136 S. Ct. at 1151. "Section 2254(d) codifies the view that habeas corpus is 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Valentino, 972 F.3d at 581 (quoting Harrington, 562 U.S. at 102-03) (additional citation omitted).

Strickland's first prong, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. A federal court reviewing a habeas petition indulges a "strong presumption" that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. at 689. The "basic lesson" of Strickland is that "judicial scrutiny" of counsel's performance must be "highly deferential." United States v. Mason, 774 F.3d 824, 828 (4th Cir. 2014) (citation omitted). Attorneys "are permitted to set priorities, determine trial strategy, and press those claims with the greatest chances of success." Id.

Strickland's second prong, the "prejudice" inquiry, requires showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. "The likelihood of a

8

different result must be substantial, not just conceivable." Valentino, 972 F.3d at 580 (quoting Harrington, 562 U.S. at 86); accord Shinn v. Kayer, 141 S. Ct. 517, 523 (2020). The question is whether the state court, which has "substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." Mays v. Hines, 141 S. Ct. 1145, 1149 (2021) (quoting Knowles, 556 U.S. at 123).

In the context of a guilty plea, the prisoner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Moreover, he "must convince the court that such a decision would have been rational under the circumstances." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (internal quotation marks omitted). "[W]hat matters is whether proceeding to trial would have been objectively reasonable in light of all the facts." Id.; see also Padilla v. Kentucky, 559 U.S. 356, 372 (2010) (to obtain relief on an ineffective assistance claim involving a guilty plea, a petitioner must convince the court that a decision to reject the plea bargain "would have been rational under the circumstances").

Here, petitioner alleges he would have gone forward with trial after the amendment to the plea agreement was made and also that the Court of Appeals of Virginia would have found error but for his counsel's failure to object. Both assertions are disproved by the record. The Fourth Circuit has held that a petitioner cannot simply allege that he would have gone to trial.

> When evaluating objective reasonableness under the prejudice prong of Strickland, "[t]he challenger's subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). The challenger "cannot make that showing merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice." Pilla v. United States, 668 F.3d 368, 372 (6th Cir. 2012). In other words, to obtain relief from a guilty plea, *the defendant must do more than allege he would have insisted on going to trial if counsel had not misadvised him as to the consequences of that decision. The "petitioner must convince the court that a decision to reject the plea*

9

> *bargain would have been rational under the circumstances.*" Padilla, 559 U.S. at 372; see also Roe v. Flores-Ortega, 528 U.S. 470, 486 (2000).

Christian v. Ballard, 792 F.3d 427, 452-53 (4th Cir. 2015) (emphasis added). Willoughby's statement to the police, which was consistent with the victim's statements to the police, was a sufficient basis to convict and there is no reason why a rational defendant in petitioner's position would have rejected the plea agreement and gone to trial. The Supreme Court of Virginia made this very point in denying his claim in state habeas.

The Supreme Court of Virginia found that petitioner had not satisfied either prong of Strickland, and found that petitioner had assented to the amendment.

> Before accepting petitioner's plea, the trial court reviewed the plea agreement with petitioner to ensure petitioner understood it. When the court reviewed the provision requiring petitioner to follow through with the recommendations made by Henrico Mental Health, petitioner interjected did he had a private psychiatrist. The court responded that petitioner could continue to see his current doctor and would not be required to go to Henrico Mental Health. The trial court suggested that plea agreement substitute petitioner's doctor's name for Henrico Mental Health and include that petitioner would also be required to take medications as prescribed by his doctor. Petitioner supplied the name to the court. Counsel clarified at petitioner's request that petitioner would not be forcibly medicated. Then the trial court asked petitioner if he understood that he would need to follow the recommendations of his doctor and take medications as prescribed, and petitioner stated that he understood. Petitioner then assured the court he was entering his pleas freely and voluntarily and that he was satisfied with the services of his counsel.

(VSCT R. at 213-14).

The habeas court next found, in the alternative, that even if the trial court had violated the prohibition against participation in the plea agreement, that the record established that counsel could have reasonably concluded that petitioner wanted to continue with the plea agreement after what it found was a non-material change." (VSCT R. at 214).

> Even assuming the trial court's suggested modification to the plea agreement to substitute petitioner's doctor and clarify the mental health treatment included medications constituted participation in the plea agreement as prohibited by Rule 3A:8(c)(1), given that the requirement of mental health treatment was already in

10

> the plea agreement, petitioner engaged in a colloquy with the court from which council could have reasonably determined petitioner still wanted to accept the plea agreement notwithstanding the non-material change.

(Id.). In turning to the specific facts of the case, the state habeas court found that it would not

> have been reasonable for him to have withdrawn his pleas and given up the benefits of his plea agreement, which included an agreement that petitioner would receive an active sentence of two years and nine months imprisonment for maliciously shooting into an occupied vehicle, well below the statutory maximum of ten years. See Code §§ 18.2-154, 18.-10(d). Further, petitioner has not proffered any defense to the charges. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, he would have pleaded not guilty, would have proceeded to trial, and the outcome of the proceedings would have been different. Hill v. Lockhart, 474 US 52, 59 (1985).

(VSCT R. at 215).

The ruling of the Supreme Court of Virginia was not an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States. Further, it was not an unreasonable determination of the facts. The state habeas court dismissal is similar to conclusions reached by the Fourth Circuit in reviewing claims under Hill. See, e.g., United States v. Santiago, 632 Fed. Appx. 769, 774 (4th Cir. 2015) (given the overwhelming evidence of gilt, which include a videotape and petitioner's confession, it would not have been "objectively reasonable" to go trial because there was no "rational defense" to support petitioner's claim that he would have gone to trial); see also United States v. Massenburg, 564 F.3d 337, 344 (4th Cir. 2009) (noting when case was a "strong one" the court "can legitimately question what [petitioner] would have to gain by going to trial").;

## V. Conclusion

For the foregoing reasons, respondent's Motion to Dismiss [Dkt. No. 7], and this petition must be dismissed with prejudice. An appropriate Order and judgment shall issue.[6]

Entered this 30th day of Dec, 2021

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

---

[6] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner fails to meet this standard.